# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                            No. 11-cr-2282 RB

**HAI GAN,**

    Defendant.

## MEMORANDUM OPINION AND FINAL ORDER OF FORFEITURE REGARDING BANK OF AMERICA AND JP MORGAN CHASE ACCOUNTS AND ONE PARCEL OF TEXAS PROPERTY

This case is before the Court on the United States' Motion for Summary Judgment as to Third Party Petition Filed by Wei Wang. (Doc. 448.) Defendant Hai Gan was convicted on 62 counts including document fraud, transporting illegal aliens, and money laundering. (Doc. 305.) Each of the counts related to a scheme in which Mr. Gan helped undocumented aliens obtain fraudulent New Mexico driver's licenses. Following conviction, the Court entered a Preliminary Order of Forfeiture for five bank accounts[1] and four parcels of real property. (Doc. 355.) Wei Wang, Mr. Gan's wife, filed a timely petition objecting to the forfeiture of one parcel of property located in Texas (the Texas property) and four of the five bank accounts. (Doc. 371.) Her petition alleges an interest in the Texas property based on payments made with community funds, and an interest in four of the bank accounts based on her salary contributions. (*See id.* at 1–2.)

The United States asks the Court to deny Ms. Wang's claims and seeks an order of final forfeiture of the bank accounts and the Texas property, subject to Ms. Wang's interest in the

---

[1] The pleadings repeatedly reference "four bank accounts," but the same pleadings suggest there are actually five at issue. (*See, e.g.*, Doc. 308 at 1 (referencing "four bank accounts" and listing five: Bank of America accounts xxxx-3970 and xxxx-9550, Wells Fargo account xxxx-4215, and JP Morgan Chase accounts xxxx-0622 and xxxx-0382) (emphasis omitted).)

property that existed prior to Mr. Gan using criminal proceeds to pay off the home loan. (Doc. 448.) Ms. Wang did not respond to the United States' Motion for Summary Judgment, and the United States' efforts to serve her with its Notice of Completion of Briefing were unsuccessful. (*See* Docs. 449; 449-1; 449-2; 449-3.) Having considered the parties' submissions and relevant law, the Court finds that there are no material issues of fact in dispute and will **grant** the United States' Motion for Summary Judgment and **order** final forfeiture of the bank accounts and Texas property, subject to Ms. Wang's limited property interest.

I. **Factual Background**[2]

On February 11, 2014, a jury convicted Defendant Hai Gan on 62 counts including fraud in connection with identification documents, transporting illegal aliens, and engaging in monetary transactions in property derived from unlawful activity (money laundering).[3] (Doc. 305 at 1–5.) Each count was related to a scheme to help undocumented aliens who were not New Mexico residents fraudulently obtain New Mexico driver's licenses. (*See* Docs. 218 at 2; 448 at 4.) In exchange for payments of up to $3,000, Mr. Gan allowed undocumented individuals to list his New Mexico properties on their driver's license applications and helped them fabricate other necessary documents. (Docs. 218 at 2–3; 448 at 4.) The Third Superseding Indictment included forfeiture allegations for the crimes charged in counts 1 through 62. (Doc. 218 at 12.) It charged that, upon conviction, Mr. Gan would be required to forfeit to the United States: (1) any property constituting or derived from proceeds obtained as the result of identification document fraud and any personal property used or intended to be used to commit that offense, (2) any property

---

[2] In accordance with summary judgment standards, the Court recites all facts in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). However, the Court will cite to the United States' list of undisputed facts as Ms. Wang has not filed a response disputing them.
[3] Mr. Gan was also convicted on two counts of witness tampering, but there was no forfeiture element associated with those charges. (*See* Doc. 305 at 5.)

2

constituting, derived from, or traceable to the offense of transporting illegal aliens, or used or intended to be used to facilitate that offense; and (3) any property involved in or traceable to money laundering. (*See id.*; *see also* 18 U.S.C. §§ 982(a)(1), (a)(6), (a)(2)(B).)

Following Mr. Gan's conviction, the United States moved for a preliminary order of forfeiture for five bank accounts at Bank of America, Wells Fargo, and JP Morgan Chase, three properties in New Mexico, and the Texas property which had been Mr. Gan's and Ms. Wang's residence. (Doc. 308 at 1–2, 6.) The Bank of America accounts contain $8,008.66 and the JP Morgan Chase accounts contain $18,989.47. (*See* Doc 308-1 at 1.) The two Bank of America accounts were held jointly by Mr. Gan and Ms. Wang. (Docs. 308 at 5; 448 at 4.) Mr. Gan told investigators that the Wells Fargo and JP Morgan Chase Accounts were "funded solely by his illegal business." (Doc. 448 at 4.) Mr. Han also told investigators that he gave "the majority of the cash he made from his business to his wife, who in turn deposited the funds into [the Bank of America] accounts." (Doc. 448 at 4; *see also* Docs. 308 at 3; 308-1 at 2.) Citing evidence introduced at trial and a sworn declaration from Homeland Security Investigations Special Agent Joshua Fry, the United States alleged that there was a sufficient nexus between Mr. Gan's offenses and the bank accounts and real property that they should be subject to forfeiture. (*See* Doc. 308 at 3–10.)

The first fraudulent driver's license issued to an individual claiming to reside at one of Mr. Gan's New Mexico properties was issued on December 8, 2008. (Docs. 308 at 5; 308-1 at 3; 448 at 4.) Between that date and Mr. Gan's arrest on May 11, 2011, "approximately $465,554.20 was deposited in the [JP Morgan Chase, Wells Fargo, and Bank of America] accounts." (Docs. 308 at 5; 308-1 at 3.) During that time period Ms. Wang received approximately $11,325 in reported income, according to Texas Workforce Commission records. (Docs. 308 at 5; 308-1 at 3; 448 at

3

5.) Agents who searched the Texas property found photocopies of fraudulently obtained licenses, various incriminating property records and banking records, and other documents. (Docs. 308 at 6; 448 at 5.) The United States alleged that, "[b]ased on the sheer mass of the documents seized and their location in almost every room of the residence, the Texas property served as the base of Hai Gan's illegal operation." (Doc. 308 at 6–7 (emphasis omitted); *see also* Doc. 308-1 at 4.)

Mr. Gan purchased the Texas property on October 31, 2008, approximately one month before the first fraudulent driver's license was issued. (Docs. 308 at 7; 308-1 at 4.) He made a $190,096.16 down payment and financed the remaining $78,100 with a loan. (Docs. 308 at 7; 308-1 at 4–5.) Mr. Gan had paid off the loan in its entirety by March 2, 2009. (Docs. 308 at 7; 308-1 at 5; 448 at 4.) Between December 8, 2008 (when the fraudulent operation began) and March 2, 2009 (when Mr. Gan paid off the loan on the Texas property), Mr. Gan deposited approximately $82,271 into the Bank of America accounts. (*Id.*) Of that amount, $50,000 came from two wire transfers from Sun Ya Li Di Wai in China. (*Id.*) Ms. Wang alleges that the $50,000 wire transfers were a gift from Mr. Gan's mother to assist the couple in paying off their home loan. (*See* Doc. 371 at 1.) Mr. Gan used $68,890 in checks from the Bank of America accounts to pay off the loan on the Texas property. (Docs. 308 at 7; 308-1 at 5.)

In the Preliminary Order of Forfeiture, the Court found "based upon the evidence already in the record and on evidence and information presented at a post-trial hearing . . . that the Subject Property is subject to forfeiture . . . and that the government has established the requisite nexus between the Subject Property and the offenses of the conviction." (Doc. 355 at 3.) The Court has thus already determined that all the listed property—each of the five bank accounts, the three New Mexico parcels, and the Texas Property—was properly subject to forfeiture based on Mr. Gan's offenses. (*See id.*)

4

As there were no third party claims filed regarding the Wells Fargo bank account or the three New Mexico properties, on April 6, 2017, the Court issued a Final Order of Forfeiture Regarding Wells Fargo Account No.-4215 and Three New Mexico Real Properties. (Doc. 441.) The final order was later amended to dismiss two of the New Mexico properties after the United States determined that, due to their poor condition and numerous back taxes and liens, the cost to the Government to dispose of the properties exceeded their fair market value. (Doc. 444.)

Thus, the only property subject to the Court's Preliminary Order of Forfeiture that remains to be addressed is (1) $8,008.66 in the two Bank of America accounts under Hai Gan's and Wei Wang's names; (2) $18,989.47 in the two JP Morgan Chase accounts under Hai Gan's name; and (3) the real property located at 4005 Lakeside Drive, The Colony, Texas, 75056. (*See* Doc. 355 at 1.) After being served with notice of the preliminary forfeiture order (*see* Doc. 365), Ms. Wang filed a third party motion objecting to forfeiture of the Texas property, Bank of America accounts, and JP Morgan Chase accounts. (Doc. 371.)[4]

Ms. Wang asserts that she is the co-owner of the Texas property, and that the home loan payments were made with funds including her salary and the $50,000 gift from her mother-in-law. (*See id.* at 1.) She also argues that she has an interest in the Bank of America accounts because she continued to deposit her salary into those accounts until they were frozen. (*See id.* at 2.) Finally, Ms. Wang asserts that she has a property interest in Mr. Gan's JP Morgan Chase accounts because "almost all the funds [in the JP Morgan accounts] [were] transferred earlier or later from the above Bank of America accounts[.]" (*Id.*) Ms. Wang also objects to the seizure of $6,600 in cash and several laptop computers, items for which the government has not sought forfeiture. (*See id.* at 2–3.)

---

[4] Ms. Wang filed her original motion on December 8, 2014, and filed a second, identical copy of the motion on January 12, 2015. (*See* Docs. 371; 385.)

## II. Legal Standard

### A. Ancillary Proceedings in Criminal Forfeiture

Federal Rule of Criminal Procedure 32.2 lays out the proper procedure for criminal forfeiture. First, the Court enters a preliminary order of forfeiture to "determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). To do so, the court "must determine whether the government has established the requisite nexus between the property and the offense." *Id.* During the preliminary order stage, "[t]he court must enter the order without regard to any third party's interest in the property," and determinations of third party interests must be "deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Fed. R. Crim. P. 32.2(b)(2)(A).

The court must conduct an ancillary proceeding if a third party files a timely petition "asserting an interest in the property to be forfeited." Fed. R. Crim. P. 32.2(c)(1); *see also* 21 U.S.C. § 853(n)(2). The petition "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." § 853(n)(3). The court must conduct a hearing on the petition, but first "may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56." Fed. R. Crim. P. 32.2(c)(1)(B).

Finally, at the conclusion of the ancillary proceeding the court enters a final order of forfeiture, "amending the preliminary order as necessary to account for any third-party rights." Fed. R. Crim. P. 32.2(c)(2). The corresponding statute explains that the court shall amend the

preliminary order of forfeiture to account for third-party interests if the court determines that the third party has established by a preponderance of the evidence that:

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section . . . .

21 U.S.C. § 853(n)(6)(A); *see also United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008). The third-party petitioner, however, cannot challenge the court's preliminary finding of forfeitability through an ancillary proceeding. *Andrews*, 530 F.3d at 1236–37. In an ancillary proceeding, the court determines only whether the petitioner has a valid interest in property that has already been approved for forfeiture. *See id.*; *see also* Fed. R. Crim. P. 32.2(c).

### B. Legal Standard for Summary Judgment

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The moving party bears the initial responsibility of showing "an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). The opposing party may not simply "rest on mere allegations or denials of [her] pleadings," *Anderson v. Liberty Lobby*, 477 U.S. 242, 259 (1986),

7

but instead must "cit[e] to particular parts of materials in the record" to support her factual positions. Fed. R. Civ. P. 56(c)(1)(A); *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). In addition, "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the court may take several actions, including "consider[ing] the fact undisputed for purposes of the motion," and "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e).

### III. Analysis

The Court begins by noting that, as Ms. Wang did not respond to the Motion for Summary Judgment, the United States' list of undisputed material facts is "deemed undisputed" per this district's local rules. D.N.M.LR-Civ. 56.1(b). However, in light of the fact that Ms. Wang is a pro se petitioner and the United States has been unable to reach her in recent service attempts, the Court will proceed to assess the record, the United States' list of material undisputed facts, and the assertions in Ms. Wang's petition in the light most favorable to her claims. *See* Fed. R. Civ. P. 56(e). Ms. Wang's additional claim that approximately $6,600 in cash and various laptop computers were seized from her home and should be returned are not within the scope of this ancillary proceeding, which addresses only Ms. Wang's ownership claims related to items listed in the Court's Preliminary Order of Forfeiture. (*See* Docs. 355; 371.)

### A. Ms. Wang has not demonstrated a valid property interest in the bank accounts.

The Court previously determined that all the funds in the Bank of America and JP Morgan Chase bank accounts are properly subject to forfeiture because they are sufficiently connected to Mr. Gan's offenses. (*See* Doc. 355 at 1.) As this ancillary proceeding is not an opportunity for a

third party to relitigate the Court's original finding of forfeitability, *see Andrews*, 530 F.3d at 1236–37, Ms. Wang's only recourse is to demonstrate an ownership interest in the funds in the account that predates the start of Mr. Gan's criminal activity.

A third party can never assert a valid property interest in the proceeds of criminal activity because all property subject to criminal forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *see also United States v. Hooper*, 229 F.3d 818, 821 (9th Cir. 2000); *accord United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007); *United States v. Catala*, 870 F.3d 6, 10–11 (1st Cir. 2017); *United States v. Emor*, 785 F.3d 671, 681 (D.C. Cir. 2015). Thus, to succeed in modifying a preliminary forfeiture order through an ancillary proceeding, the third party must show, by a preponderance of the evidence, that her right or title to the forfeited property was superior to that of either the defendant or the government at the time the offense began. *See* 21 U.S.C. § 853(n)(6)(A); *see also Hooper*, 229 F.3d at 821.

Ms. Wang has no valid ownership interest in any of the funds derived from her husband's criminal activity. However, she alleges that she deposited all her salary checks into the joint Bank of America accounts and thus has an ownership interest in the funds remaining in the accounts. (*See* Doc. 371 at 2.) Accepting as true Ms. Wang's assertion that she deposited all her earnings into the Bank of America accounts, and based on the undisputed fact that Ms. Wang earned $11,325.00 between December 8, 2008, and May 11, 2011 (*see* Doc. 448 at 5), Ms. Wang would have an ownership interest in, at most, $5,662.50 in the accounts.[5]

---

[5] Texas is a community property state, so all income earned during marriage is community property in which each spouse has an undivided, 50 percent interest. *See* Tex. Fam. Code Ann. § 3.002 (West) ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."). Separate property includes only property acquired before marriage, "by gift, devise, or descent" during marriage, and recovery for personal injury during marriage. § 3.001. Thus, Mr. Gan has a 50 percent interest in Ms. Wang's income earned during their marriage.

However, during that same time period $465,554.20 was deposited into the bank accounts, including the Bank of America accounts, most of which was derived from criminal activity. (*See* Doc. 308-1 at 3.) Mr. Gan paid off the loan on the Texas property using $68,890 in checks from the Bank of America accounts. (*Id.* at 5.) Ms. Wang has not alleged nor cited any facts demonstrating that $5,662.50 of the $8,008.66 remaining in the accounts is traceable to her salary, and not the proceeds of Mr. Gan's illegal activity. She has not sufficiently identified evidence or facts in the record to show a genuine dispute of material fact as to the ownership of the funds currently held in the joint Bank of America accounts. As such, summary judgment in favor of the United States and final forfeiture of the Bank of America accounts are proper.

Ms. Wang has provided even fewer facts in support of her ownership claim to the funds in the JP Morgan Chase accounts, as she never deposited her own earnings into the accounts and they are held solely in her husband's name. Ms. Wang argues only that "almost all the funds [were] transferred earlier or later from the above Bank of America accounts." (Doc. 371 at 2.) As the Court has determined that Ms. Wang lacks an ownership interest in the Bank of America accounts, it follows that she also lacks an interest in the JP Morgan Chase accounts if they were funded by the Bank of America accounts. Further, the record shows that Mr. Gan admitted to investigators that the JP Morgan Chase accounts "were funded solely by his illegal businesses." (Doc. 448 at 5.) Since the fact that the JP Morgan Chase accounts contain only criminal proceeds is not in dispute, the Court will grant summary judgment in favor of the United States and order final forfeiture of those accounts.

> **B. Ms. Wang has a valid property interest in the portion of the Texas property paid for with community funds prior to Mr. Gan's criminal activity.**

Mr. Gan used community funds to make a down payment on the Texas property prior to the first alleged license fraud transaction. (Doc. 448 at 4.) Thus, the residence was acquired as

community property and Ms. Wang has a 50 percent interest in the Texas property. *See* Tex. Fam. Code Ann. § 3.002 (West); *see also United States v. Loftis*, 607 F.3d 173, 178 (5th Cir. 2010). Ms. Wang asserts that the Court "could have deleted this real property from the Preliminary Forfeiture List, due to a third party implicated in the seized asset." (Doc. 371 at 1–2.) As the United States points out, however, Ms. Wang's interest in amending the preliminary forfeiture order regarding the Texas property extends only as far as her interest in the property itself under Texas law. (*See* Doc. 448 at 9–10.) Her interest began as an undivided 50 percent interest at the time of the down payment, but must be reduced based on the subsequent home loan payments that Mr. Gan made using criminal proceeds.

Once Mr. Gan began using criminal proceeds to pay off the home loan, the increased property interest in the house that the couple acquired as a result was actually vested in the government. *See* 21 U.S.C. § 853(c) (all property subject to criminal forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture"); *see also Hooper*, 229 F.3d at 822. The Court has determined that Ms. Wang lacks a property interest in the Bank of America accounts predating Mr. Gan's criminal activity, and the funds in the Bank of America accounts are deemed forfeitable criminal proceeds. Thus, the marital community only has an interest in the Texas property after subtracting the $68,890 in criminal proceeds used to pay off the home loan. (*See* Doc. 448 at 4–5.) To the extent that Ms. Wang argues the $50,000 wire transfer from her mother-in-law was a gift to the community to help pay for the home, she has not pointed to specific facts in dispute that could lead a jury to find that the $50,000 was not illegally obtained. Thus, there is no genuine dispute of fact as to whether the $50,000 used to pay off the home loan came from criminal proceeds (in which the marital community has no property interest) or came from a gift

11

(in which the marital community would have a valid interest). The Court finds that Ms. Wang has no property interest in any of the funds used to pay off the loan.

The United States argues that Ms. Wang's interest in the Texas property is limited to her portion of the "untainted" value of the home that remains after necessary maintenance and repairs, paying off outstanding taxes and property assessments, and reimbursing the government for the $68,890 in criminal proceeds used to pay off the home loan. (*Id.* at 11–12.) Specifically, the United States requests that the Court order the sale of the property and distribution of the proceeds in the following order:

> First, payment of all costs, fees, and expenses associated with the maintenance, repair, and sale of the property. Second, payment of all outstanding local taxes and property assessments. Third, forfeiture to the United States of the first $68,890 of the net sale proceeds representing the criminal proceeds used to pay off the property loan. Fourth, forfeiture of one-half the remaining net sale proceeds to the United States and distribution of one-half of the remaining net sale proceeds to Ms. Wang.

*Id.* Following an order of forfeiture, "the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons." 21 U.S.C. § 853(h). The Court thus grants summary judgment in favor of the United States and orders final forfeiture of the Texas property. The Attorney General is directed to dispose of the Texas property "by sale or any other commercially feasible means" and ensure Ms. Wang receives 50 percent of its final value once the cost of the sale and outstanding taxes have been paid and the government has been reimbursed for the $68,890 in loan payments made with criminal proceeds. *See id.*

**THEREFORE**,

**IT IS ORDERED** that the United States' Motion for Summary Judgment as to Third Party Petition Filed by Wei Wang (Doc. 448) is **GRANTED**;

**IT IS FURTHER ORDERED** that pursuant to 21 U.S.C. § 853(n)(7), all right, title and interest in the following property is forfeited to the United States, and title thereto is vested in the United States:

a. Funds and monies in the amount of $8,008.66 from Bank of America accounts xxxx-3970 and xxxx-9550 in the name of Hai Gan and Wei Wang;

b. Funds and monies in the amount of $18,989.47 from JP Morgan Chase accounts xxxx-0622 and xxxx-0382 in the name of Hai Gan;

c. Real property located at 4005 Lakeside Drive, The Colony, TX 75056, more particularly described as: Ridgepoint Ph 4 Blk R Lot 24, less Ms. Wang's 50 percent interest in the property after its sale costs and outstanding taxes have been paid, and the government has been reimbursed for the $68,890 in loan payments made with criminal proceeds.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**